UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 0:19-cv-61080

**JALINE FENWICK,**
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

**FLORIDA PET RETAILERS, INC. AND
POOCHES OF PINES, INC. D/B/A
PETLAND PEMBROKE PINES,**

        Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY PROCEEDINGS**

Plaintiff Jaline Fenwick hereby files her Response in Opposition to Defendants Florida Pet Retailers, Inc. ("Florida Pet Retailers") and Pooches of Pines, Inc d/b/a Petland Pembroke Pines ("Petland Pembroke Pines") (collectively referred to as "Defendants") Motion to Stay Pending FCC's Promulgation of Revised Definitions ("Motion"), [ECF No. 11], and states:

**I. INTRODUCTION**

Defendant Petland Pembroke Pines operates as a pet supply and pet store in Pembroke Pines, Florida. Defendant Florida Pet Retailers also owns and/or operates at least three other such pet stores including Pooches of Largo, Inc d/b/a Petland Largo, Florida Pet Retailers, Inc d/b/a Petland Davie; and Pooches of Kendall, Inc d/b/a Petland Kendall. To boost Defendants' sales and ultimately their profits, Defendants sent over 4,000 marketing text messages without first obtaining proper consent. *See* Motion at pg. 1.

In doing so, Defendants violated the Telephone Consumer Protection Act ("TCPA").

1

Rather, than litigate this case on the merits, Defendants seek an indefinite stay in the hopes that it will receive a reprieve from the Federal Communications Commission ("FCC"). Defendants' Motion should be denied. The primary jurisdiction doctrine does not apply here because this Court is more than capable of analyzing the statute and case law to determine whether the texting platform utilized by Defendants is an automatic telephone dialing system ("ATDS"). Further, Defendants give no indication of when, if ever, the FCC will have an opinion on the matter. That is because no one knows when the FCC will act, thereby rending Defendants' requested stay impermissibly indefinite. More importantly, as discussed below, any order issued by the FCC will not be retroactive and, moreover, the Supreme Court recently called into question whether it would even be binding on this Court.

As courts from this District and others have recently held in response to identical requests by defendants seeking to skirt liability, a stay is not warranted. *See Goldschmidt v. Rack Room Shoes*, No. 18-21220, 2019 U.S. Dist. LEXIS 1319, at *3 (S.D. Fla. Jan. 3, 2019) ("But despite Defendant's assertion that the ruling is expected by late 2018 or early 2019, there is no real indication that the FCC will in fact issue a ruling by a certain date. Thus, under Eleventh Circuit precedent, Defendant's request for a stay qualifies as immoderate. Indeed, sister courts in this district have denied similar motions."); *Wright v. eXp Realty, LLC*, No. 6:18-cv-1851-Orl, 2019 U.S. Dist. LEXIS 96516, at *13 (M.D. Fla. Jun. 7, 2019)(denying defendant's motion to stay and recognizing that "a stay is not warranted by the doctrine of primary jurisdiction"); *Cline v. Ultimate Fitness Grp., LLC*, Case No. 6:18-cv-771-Orl-37GJK, 2019 U.S. Dist. LEXIS 98791 (M.D. Fla. Feb. 12, 2019)(same); *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) ("However, the undersigned finds that such a stay 'would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay

pending a similar proceeding.") (citation omitted); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1070 (D. Nev. Mar. 25, 2019) ("In sum, the Court is unconvinced that judges are incompetent to construe the TCPA to define the contours of an ATDS. Moreover, even if [defendant]s speculation is correct and the FCC order is looming, the Court is skeptical that such an order would bring finality to the issue of what constitutes an ATDS.")

While Defendants cite to this Court's ruling in *Secure v. Ultimate Fitness Group, LLC*, 2019 WL 1612623 (S.D. Fla. Mar. 18, 2019) to support their Motion, the stay in *Secure* has become indefinite and this Court should now deny Defendants' Motion to avoid an indefinite stay from taking hold in this matter as well. Notably, the defendant in *Secure* argued same as Defendants do now, that a ruling from the FCC "is likely to come soon" but *Secure* has been stayed for almost four months with no FCC ruling in sight. *See* Motion at Pg. 20. Indeed, in the four months that *Secure* has been stayed, there is still no indication of when or even if the FCC will rule.

Defendants' Motion should therefore be denied and this case permitted to proceed on the merits.

## II. BACKGROUND

### A. Facts

On or about March 22, 2019, Defendants transmitted the following generic promotional text message to Plaintiff's and the class members' cellular telephones:



[ECF No. 1] at ¶ 29.

Defendants sent the same generic text message to Plaintiff and over 4,000 class members. *See* Motion at pg. 1.  To transmit the messages, Defendants utilized a short code (797979) and texting platform hosted by www.EZtexting.com. See [ECF No. 1] at ¶¶37,46.  This very fact pattern was recently found by the Ninth Circuit to not be human intervention for purposes of rendering a text messaging platform outside the scope of the TCPA.  *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018) (defendant did not "dispute that the Textmunication system dials numbers automatically . . . even though humans, rather than machines, are needed to add phone numbers to the Textmunication platform," "[c]ommon sense indicates that human intervention of some sort is required before an autodialer can begin making

4

calls, whether turning on the machine or initiating its functions. Congress was clearly aware that, at the very least, a human has to flip the switch on an ATDS.").

### B. There is no Split of Authority

To support its claim that this Court needs FCC guidance, Defendants attempt to portray the state of the law as one in turmoil as district courts grapple with the impact of *ACA International*. Defendants are wrong, and besides a few outlier district courts, there is no circuit split as Defendants contend.

"The Third Circuit adopted *ACA International* in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018), and stated that, '[i]n light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling.'" *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-cv-4063, 2019 U.S. Dist. LEXIS 59235, at *29 (E.D. Pa. Apr. 5, 2019). "The Third Circuit, however, has not taken a definite position on the continuing validity of the 2003 and 2008 Orders." *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 647 (E.D. Pa. 2018). In other words, the Third Circuit "neither discussed nor cited the [FCC's] 2003 and 2008 [TCPA] Orders, leaving open whether those Orders remain binding within the circuit." *Id*.

In its 2003 TCPA Order, the FCC found that equipment can qualify as an ATDS if it (1) "store[s] pre-programmed numbers or receive[s] numbers from a computer database;" (2) can "dial those numbers at random, in sequential order, or from a database of numbers;" and (3) its "basic function" is "the *capacity* to dial numbers without human intervention." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, at 14090-92 (2003) (emphasis original). Thus, Defendants' claim that random or sequential number generation is a

5

requirement in the Third Circuit is incorrect given the continuing validity of the FCC's 2003 TCPA Order in that Circuit.

> Similarly, in *King v. Time Warner Cable*, the Second Circuit:
>> focused on a different component of the definition than is at issue here and specifically left open the question raised by this case: "In *ACA International*, the D.C. Circuit noted that 'the role of the phrase, 'using a random or sequential number generator,' has generated substantial questions over the years,' which the FCC's 2015 Order failed to conclusively resolve. **To the extent . . . we [require] that those complicated questions be answered in the present case, we leave it to the district court to address them**."

*Gonzalez v. Hosopo Corp.*, No. 18-cv-10072-FDS, 2019 U.S. Dist. LEXIS 61365, n.5 (D. Mass. Apr. 9, 2019) (quoting *King v. Time Warner Cable*, 894 F.3d 473 (2d Cir. 2018)). In other words, the Second Circuit never reached the question of whether random or sequential number generation is required. Thus, Defendants finds no support in *Dominguez* or *King* for a purported circuit split and for their contention that random or sequential number generation is a requirement under the law.

There is no confusion on what an ATDS is. District courts have been more than capable of resolving the issue for themselves and holding that an ATDS includes equipment that can dial automatically from list a telephone numbers, like the texting platform utilized by Defendants. *See Adams v. Ocwen Loan Servicing, LLC*, No. 18-cv-81028-WPD, 2018 U.S. Dist. LEXIS 184513, at *8 (S.D. Fla. Oct. 26, 2018) (quoting *Marks*, 904 F.3d at 1043); *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) ("A device may qualify as an ATDS if it 'stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns.'"); *Ruby v. Dish Network*, No. 18-cv-0400, 2019 U.S. Dist. LEXIS 62472 (E.D. Pa. March 25, 2019) (denying summary judgment on the issue of whether the Defendant used an automated telephone dialing system because the system had the capacity to dial

automatically from a list of numbers); *Gonzalez v. Hosopo Corp.*, No. 18-cv-10072-FDS, 2019 U.S. Dist. LEXIS 61365, at *15 (D. Mass. Apr. 9, 2019) (an ATDS need only be able to make calls from a stored list of telephone numbers)*; Singer v. Las Vegas Ath. Clubs*, No.17-cv-01115-GMN, 2019 U.S. Dist. LEXIS 48838 (D. Nev. March 25, 2019) (same); *Jiminez v. Credit One Bank, N.A.*, No. 17cv2844-LTS, 2019 U.S. Dist. LEXIS 53096, at *17 (S.D.N.Y. Mar. 28, 2019) ("The Court defers to the FCC's prior determination that 'a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers,' even if it dials numbers from a list."); *Nicholson v. REI Energy, Ltd. Liab. Co.*, No. 18-cv-00203-HZ, 2019 U.S. Dist. LEXIS 33004 (D. Or. Feb. 28, 2019); *Duran v. La Boom Disco, Inc.*, No. 17-cv-6331, 2019 U.S. Dist. LEXIS 30012, at *30 (E.D.N.Y. Feb. 25, 2019) ("As discussed earlier, I interpret the prior FCC Orders as holding that equipment can meet the definition of an autodialer if it pulls from a list of numbers, so long as the equipment also has the capacity to dial those numbers without human intervention."); *Ramos v. PH Homestead, LLC,* 358 F. Supp. 3d 1355, 1363 (S.D. Fla. 2019) ("Plaintiff has sufficiently alleged that the Text Message was sent by autodialing, based on the presence of marketing promo codes and a website in the Text Message, and the "impersonal and generic nature" of the wording, all suggesting that the Text Message was sent to a mass audience by an autodial function."); *Ewing v. Encor Solar, LLC*, No. 18-cv -2247-CAB, 2019 U.S. Dist. LEXIS 10270 (S.D. Cal. Jan. 22, 2019).

### III.   LEGAL STANDARD

#### A.   <u>Standard Under the Primary Jurisdiction Doctrine</u>

"Primary jurisdiction 'is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'" *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1379 (S.D. Fla. 2014) (citing *Reiter v. Cooper*, 507 U.S. 258,

268, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993)). "However, 'the doctrine does not require that all claims within an agency's purview be decided by the agency.'" *Swift v. Bank of Am. Corp.*, No. 3:14-cv-1539-J-20PDB, 2015 U.S. Dist. LEXIS 189915, at *4-5 (M.D. Fla. June 17, 2015) (citing *Brown v. MCI Network Serv.,* Inc., 277 F.3d 1166, 1172 (9th Cir. 2002). "Courts should be reluctant to invoke primary jurisdiction doctrine because it often results in greater expense and delay to the litigants." *Swift v. Bank of Am. Corp.,* 2015 U.S. Dist. LEXIS 189915, at *4-5 (citing *Miss. Power and Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir. 1976)).

"There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 U.S. Dist. LEXIS 56931, at *7 (S.D. Fla. Apr. 30, 2015). "However, the primary jurisdiction doctrine 'is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit,' but instead 'is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1380 (S.D. Fla. 2014) (citing *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

B. **Standard Under the Court's Inherent Power**

A defendant must demonstrate an actual "need" for a stay. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997). The Eleventh Circuit holds that the mere possibility that the law might change cannot justify granting a stay. *See Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) (citing *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007)); *see also*

*Speer v. Whole Food Market Group, Inc.*, No. 14-cv-3035, 2015 WL 2061665, at *1 (M.D. Fla. April 29, 2015).

When determining whether to grant a stay, courts will examine the following factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *George E. Warren Corp. v. OceanConnect LLC*, No. 2:12-cv-14125-KMM, 2012 WL 12869199, at *5 (S.D. Fla. July 25, 2012) (citing *eCOMSYSTEMS, Inc. v. Shared Mktg. Serv., Inc.*, No. 8:10-cv-1531-T-33AEP, 2011 WL 280942, at *2 (M.D. Fla. Jan. 26, 2011); *Roblor Mktg. Grp. Inc. v. GPS Indus., Inc.*, 633 F. Supp. 2d 1341, 1346-47 (S.D. Fla. 2008)). "In exercise of their discretion, district courts are cautioned that a stay should not be granted where the length of the stay would be immoderate or indefinite." *Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 U.S. Dist. LEXIS 56931, at *6 (S.D. Fla. Apr. 30, 2015) (internal quotation marks and citations omitted).

IV.  **ARGUMENT AND MEMORANDUM OF LAW**

A. **Staying the Case Pursuant to the Primary Jurisdiction Doctrine is Unwarranted.**

Defendants ask this Court to stay the case indefinitely pursuant to the "primary jurisdiction" doctrine. Defendants hold out hope that the FCC will re-interpret the term ATDS in a way that absolves it of liability for the text messages it sent. In reality, neither Defendants nor anyone else knows when or even if the FCC will issue its rule. Furthermore, even if the FCC does reinterpret what an ATDS is, there is no guarantee that their revised definition will have any effect on the matter at hand, or that it will even be binding on this Court. *See PDR Network, LLC v.*

*Carlton & Harris Chiropractic, Inc.*, 204 L.Ed.2d 433, 435 (U.S. 2019) (questioning whether an FCC order may ultimately be binding on district courts and remanding to lower court to answer two preliminary questions).

As discussed below, the issues in this case are easily within the purview of the Court, and there is accordingly no legitimate basis to issue a stay based on primary jurisdiction.

### 1. *The Primary Jurisdiction Doctrine is Inapplicable.*

"The primary jurisdiction doctrine is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit, but instead is to be used only if a claim requires resolution of **an issue of first impression**, or of **a particularly complicated issue that Congress has committed to a regulatory agency**." *Garcia v. Kashi Co.*, 12- 21678-CIV, 2014 WL 4392163, at *12 (S.D. Fla. Sept. 5, 2014) (quotations omitted, emphasis added). "The 'deciding factor' in whether to invoke the doctrine is 'efficiency.'" *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, at *7-8 (N.D. Cal. July 2, 2018) (quoting *Rhoades v. Avon Prods. Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)). In other words, "whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id*; *see also Lardner v. Diversified Consultants Inc.*, No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 190656, at *2-3 (S.D. Fla. Apr. 28, 2014) ("A court should be reluctant to invoke the doctrine of primary jurisdiction because it may result[] in added expense and delay to the litigants.") (internal citations and quotation marks omitted).

In this case, the interpretation of the statutory definition of ATDS is neither an "issue of **first impression**" nor a "**particularly complicated** issue that Congress has committed to a regulatory agency." *Pieterson*, 2018 U.S. Dist. LEXIS 113125, at *7-8 (declining to stay action pending further FCC guidance, explaining that "the primary jurisdiction doctrine does not

comfortably fit the circumstances of this case because the issues before the FCC are not ones of first impression and controlling or persuasive law already exists") (emphasis added); *see also Singer v. Las Vegas Ath. Clubs*, No. 2:17-cv-01115-GMN-VCF, 2019 U.S. Dist. LEXIS 48838, at *10 (D. Nev. Mar. 25, 2019) ("[T]he statutory definition of an ATDS is neither an issue of first impression, nor one that judges are incompetent to decide."); *Holcombe v. Credit Prot. Ass'n, LP*, 3:14-CV-14 CAR, 2014 WL 4252277, at *3 (M.D. Ga. Aug. 28, 2014) (denying motion to stay pending FCC ruling because, inter alia, "it is clear the two issues presented are not matters of first impression for this Circuit or the FCC[.]").

Rather, the meaning of the term ATDS is an issue of law, capable of resolution by construing and interpreting the federal statute in which the term appears – the workaday product of a federal district court. *See, e.g., Marks*, 2018 U.S. App. LEXIS 26883, at *27 (interpreting ATDS as including equipment that "stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns"); *see also Meat Cutters v. Jewel Tea Co., Inc.*, 381 U.S. 676 (1965) (primary jurisdiction doctrine is inapplicable when the question is not one of fact requiring the fact-finding expertise of a federal agency, but rather one of law).

Questions of statutory construction and interpretation are within the conventional experience of the judiciary, not the particularized experience of the FCC, and therefore do not implicate the primary jurisdiction doctrine. *See, e.g., Knapp-Ellis v. Stellar Recovery, Inc.*, 2:13-CV-01967-RSM, 2014 WL 5023632, at *3 (W.D. Wash. Oct. 8, 2014) (denying motion to stay pending FCC ruling because, inter alia, the petitions in question raised "statutory interpretation questions [that] are clearly not matters of first impression which would prescribe application of the primary jurisdiction doctrine"); *Prater v. Medicredit Inc.*, No. 4:14CV159NCC, 2014 WL 4652942, at *3 (E.D. Mo. Sept. 18, 2014) (denying stay pending resolution of FCC petitions because, inter alia, "at issue in

this case is whether provisions of the TCPA have been violated. Such a determination is within the conventional experience of courts and is not within the particularized expertise of the FCC. Second, the issues presented in this matter do not require the exercise of administrative discretion by the FCC. Third, a determination of whether the TCPA has been violated, as alleged by Plaintiff, does not require the court to become embroiled in the technical aspects of matters within the FCC's jurisdiction."); *Wheeler v. Portfolio Recovery Assocs., LLC*, No. 5:18-CV-179-DAE, 2019 U.S. Dist. LEXIS 40671, at *10 (W.D. Tex. Jan. 22, 2019) (declining to stay case pending an "opinion from the FCC providing guidance on the definition of ATDS," as that "the Court is able to apply existing law in resolution of Plaintiff's claims"); *Nicholson v. REI Energy, Ltd. Liab. Co.*, No. 3:18-cv-00203-HZ, 2019 U.S. Dist. LEXIS 33004, at *11 (D. Or. Feb. 28, 2019).

Just last month, in *Wright v. eXp Realty, LLC*, another court denied a defendant's request for a stay in a similar TCPA case.  No. 6:18-cv-1851-Orl, 2019 U.S. Dist. LEXIS 96516, at *13 (M.D. Fla. Jun. 7, 2019).  In its ruling, which found that "a stay is not warranted by the doctrine of primary jurisdiction," the *Wright* court noted that "the abundance of post-ACA cases supports a finding that the definition of an ATDS is not beyond the Court's capabilities." *Wright*, 2019 U.S. Dist. LEXIS 96516, at *11.  The *Wright* court went on to cite *Peralta v. Rack Room Shoes, Inc.,* No. 18-3738, 2018 U.S. Dist. LEXIS 204000, 2018 WL 6331798, at *8 (E.D. La. Dec. 3, 2018), which held that "[s]ince the District of Columbia Circuit's *ACA International* ruling, several district courts have considered whether to apply the primary jurisdiction doctrine to stay proceedings in anticipation of the FCC's guidance on the definition of ATDS, and nearly all of them (of which this Court is aware) have denied the motions to stay." *Id*. at *13.

Similarly, in *Cline v. Ultimate Fitness Grp., LLC*, the court was similarly faced with determining whether to stay the matter pending the FCC issuing a ruling on the ATDS statutory

definition. Case No. 6:18-cv-771-Orl-37GJK, 2019 U.S. Dist. LEXIS 98791 (M.D. Fla. Feb. 12, 2019). In declining to apply the primary jurisdiction doctrine that court similarly held that it was more than capable of determining what constitutes an ATDS:

> To be sure, the relevant issue here—whether certain technology constitutes an ATDS—falls within the FCC's purview. But that does not dispose of the Court's inquiry. A definitive ruling from the FCC would undoubtedly clarify the ambiguity. Yet that decision could be years away and, even then, may face the same challenges as the 2015 FCC order, which would likely prompt another request for a stay. **Further, although additional guidance from the FCC would aid the Court in its determination, the Court is more than capable of adjudicating this case in the current landscape. Faced with the same murky sky, other district courts have continued to take off and descend, albeit with diverse flight patterns**.

*Id*. at *10 (internal citations omitted) (emphasis added).

This Court should reject Defendants' bid for an indefinite stay of these proceedings, as such relief would impede the "just, speedy, and inexpensive determination of [this] action," in direct contravention of Federal Rule of Civil Procedure 1.

### 2. *Staying the Case Would Only Needlessly Delay the Resolution of Plaintiff's and the Class Members' Claims.*

"The primary jurisdiction doctrine requires the Court to consider 'whether invoking primary jurisdiction would needlessly delay the resolution of claims.'" *Pieterson*, 2018 U.S. Dist. LEXIS 113125, at *11 (citations omitted).

Defendants fail to show that an FCC decision on the ATDS issue is imminent, or even likely within a particular time frame. *See Peralta*, 2018 U.S. Dist. LEXIS 204000, at *22-23 (stay unwarranted where "there is no concrete indication as to the timing of the FCC's issuance of its opinion, and even after it is released, the opinion could be challenged"); *Grogan v. Aaron's Inc.*, No. 1:18-CV-2821-AT, 2018 U.S. Dist. LEXIS 201542, at *21 (N.D. Ga. Oct. 26, 2018) (denying stay pursuant to primary jurisdiction doctrine because "the court [is] [un]willing to stay this matter

13

for what could end up being years"); *Baum v. ADT LLC*, Civ. A. 18-0777, 2018 U.S. Dist. LEXIS 180530, at *9 (W.D. Pa. Oct. 22, 2018). The reality is that no one, including Defendants, have any idea of when (or even if) the FCC will issue a decision interpreting the statutory definition of ATDS.

But even if an interpretive ruling on the issue is forthcoming, "[e]xperience teaches [that the FCC's rulemaking process] c[an] be lengthy," and that any final outcome that results will invariably be subjected to "further challenge [in court], which is exactly what happened with the 2015 Declaratory Ruling." *Pieterson*, 2018 U.S. Dist. LEXIS 113125 at *14; *Barrera v. Comcast Holdings Corp.*, 2014 U.S. Dist. LEXIS 65800, 2014 WL 1942829 (N.D. Cal. May 12, 2014) (staying TCPA case in 2014 while the FCC considered a petition on the issue of reassigned numbers, after which a petition for judicial review of the resulting 2015 Declaratory Ruling was filed in the D.C. Circuit; the parties ultimately stipulated to dismiss the case).

In declining to apply the primary jurisdiction doctrine in *Cline v. Ultimate Fitness Grp., LLC*, Judge Dalton acknowledged that a decision by the FCC "could be years away and, even then, may face the same challenges as the 2015 FCC order, which would likely prompt another request for a stay." Case No. 6:18-cv-771-Orl-37GJK, 2019 U.S. Dist. LEXIS 98791, at *10 (M.D. Fla. Feb. 12, 2019). These concerns were reiterated again last month by the court in *Wright*, which cited to the FCC Commissioner Michael O'Rielly's own words which acknowledged that quick action is not likely:

> To be clear, the Commission is not sitting on its hands unaware of the TCPA debates brewing in the courts and affected boardrooms. **But, we are a busy agency**. Under this Chairman, we have been extremely focused on moving an aggressive, deregulatory, pro-consumer agenda that reflects current market realities. Failure to address TCPA is not a failure of leadership ... Instead, the onus is on you and others to raise awareness of the need for corrective actions to a much, much greater extent. **While I am already convinced of**

14

> **the need to act and can help somewhat, it's your job to convince my colleagues and agency staff to do so. May I humbly suggest that the advocacy on one lone industry will not be enough to truly move the needle.**

No. 6:18-cv-1851-Orl, 2019 U.S. Dist. LEXIS 96516, at *13 (M.D. Fla. Jun. 7, 2019) (internal citations omitted) (emphasis original). As there is no definite timeline for when or even if the FCC will rule on this issue, staying the case makes no practical sense. A stay will only prolong the litigation and Defendants' Motion should be denied.

### B.  A Stay is Not Warranted Under the Court's Inherent Powers.

Defendants' secondary argument—that the Court should stay this case pursuant to its inherent powers—fares no better. A stay here: (1) will be indefinite and extremely prejudicial to Plaintiff; (2) will not simplify the issues; and (3) will not reduce the burden of litigation.

### *1.  A Stay Will Be Indefinite and Unduly Prejudice Plaintiff and the Class Members.*

As discussed above, there is no guarantee that the FCC will issue a new rule, or, if it does, how long it will take for such a hypothetical ruling to become final, or whether this Court will even be bound by it. Thus, Defendants seek to indefinitely stay this case and prejudice Plaintiff and the class members. *See Swift v. Bank of Am. Corp.,* No. 3:14-CV-1539-J-20PDB, 2015 WL 13333136, at *3 (M.D. Fla. June 18, 2015*)* (A stay "would prejudice the Plaintiffs by delaying their day in court" and "by staying this action, this Court would be adding greater expense and delay to the litigants involved.").

"[T]he indefinite length and uncertain outcome . . . substantially weigh against requiring Plaintiff 'to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both.'" *See Sliwa v. Bright House Networks, LLC*, No. 16-cv-235, 2016 U.S. Dist. LEXIS 93852, at *10-11 (M.D. Fla. July 19, 2016) (denying motion to stay TCPA case based on other proceedings because of the indeterminate length of the requested stay); *see also Schwyhart v.*

*Amsher Collection Servs.*, No. 15-cv-01175-JEO, 2016 U.S. Dist. LEXIS 56065 (N.D. Ala. Apr. 22, 2016) (denying motion to stay TCPA case and explaining "there is always the possibility that the [decision] will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here."); *Mancini v. JPMorgan Chase Bank, N.A.*, No. 15-cv-61524-UU, 2016 U.S. Dist. LEXIS 193235, at *3 (S.D. Fla. Mar. 25, 2016) (denying motion to stay TCPA case, citing *Landis*, and holding that a stay "would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding.").

Plaintiff should be allowed to proceed with discovery in this case without delay. A prolonged stay risks the irretrievable loss of evidence and irreparable harm to Plaintiff and the putative class members. Witness memories fade over time, original documents can be lost before trial, and thus a protracted stay leads to irreversible loss of needed information. *See Young v. Peraza*, No. 15-cv-60968, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."). Thus, for these reasons, an indefinite stay would prejudice Plaintiff and the putative class members, and the Court should deny Defendants' Motion accordingly.

### 2. *A Stay Will not Simplify the Issues or Streamline Trial.*

While Defendants expel a great deal of effort to sow confusion in a post *ACA International* world, the reality of the matter is that this Court is fully capable of determining whether Defendants utilized an ATDS and violated the TCPA. *See Wright*, 2019 U.S. Dist. LEXIS 96516 at *13 ("the Court finds the abundance of post-*ACA* cases supports a finding that the definition of an ATDS is

not beyond the Court's capabilities"). Thus, staying this matter will not simplify any issue or streamline the trial.

As discussed above, since *ACA International*, the overwhelming weight of authority still holds that the statutory definition of ATDS includes a device that dials automatically from a list of telephone numbers, just like the texting platform utilized by Defendants. In reaching this same conclusion, the Ninth Circuit recently held:

> Despite the ambiguity of the statutory definition of ATDS, reading the definition "in [its] context and with a view to [its] place in the overall statutory scheme," *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133, we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers.

*Marks*, 904 F.3d at 1052. The Ninth Circuit also reaffirmed that a device need not operate completely without human intervention, but rather found that "Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control." *Id.* at 1052 (emphasis in original) (citing 47 U.S.C. § 227(a)(1); *ACA*, 885 F.3d at 703 ("'[A]uto' in autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' 47 U.S.C. § 227(a)(1)—would seem to envision non-manual dialing of telephone numbers."))."

Furthermore, if the FCC issues an order, that the order will apply proactively not retroactively because it would be doing so in its rule-making capacity. Indeed, when Congress grants an administrative agency, like the FCC, administrative rule-making authority, that power "will not, as a general matter, be understood to encompass the power to promulgate retroactive

rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The TCPA contains no such language. In *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015), the Eleventh Circuit held that when the FCC expanded liability by issuing a formal order modifying the definition of consent, it could not apply to conduct that pre-dated the FCC Order. *See id*. at n.4 (In 2012, the FCC altered the requisite form of prior express consent …This revision did not affect Mr. Murphy because he received the text messages before the 2012 rules were implemented"). Therefore, even if the FCC issues an order one day, and even if this Court is bound by it, it would not apply retroactively to Plaintiff's and the class members' alleged violations in this case.

### 3. *A Stay Will not Reduce the Burden of Litigation.*

A stay here will not reduce the burden of litigation. Even if the FCC issues an order, this litigation will nonetheless go on, because Plaintiff will still need to take discovery concerning the capacity and capability of the text message platform that Defendants used in order to determine whether the technology falls within the newly-interpreted meaning of ATDS (which will be of persuasive authority at best). Staying the case does nothing to resolve these issues, and simply prolongs the litigation timeline.

To complete this process, it is important to begin it. Waiting until the FCC weighs in on the meaning of ATDS will not change the work that needs to be completed by the parties. *See, e.g., Somogyi v. Freedom Mortg. Corp.*, Civil Action No. 17-6546 (JBS/JS), 2018 U.S. Dist. LEXIS 129697, at *12 (D.N.J. Aug. 2, 2018) (denying motion to stay TCPA case because "[w]hatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS," such that "[i]t is therefore doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues, for purposes of deciding the present motion to dismiss");

*Knapp-Ellis*, 2014 WL 5023632, at *3 (denying motion to stay pending resolution of FCC petitions where "the issues raised in the Petitions do not appear to be dispositive of claims and defenses in this case").

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

**WHEREFORE**, Plaintiff Jaline Fenwick, on behalf of herself and the putative class members, respectfully requests the entry of an order denying Defendants' Motion, and for such other relief as deemed appropriate by the Court.

Date: July 9, 2019

Respectfully submitted,

**EISENBAND LAW, P.A.**

*/s/ Michael Eisenband*
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 9, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                                 **EISENBAND LAW, P.A.**

*/s/ Michael Eisenband*
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092